# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, B.T. PALMER, T.H. CAMPBELL**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## ADAM S. NELMS
## CONSTRUCTION MECHANIC THIRD CLASS (E-4), U.S. NAVY

### NMCCA 201400369
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 4 June 2014.
**Military Judge:** Col James K. Carberry, USMC.
**Convening Authority:** Commander, Navy Region Hawaii, Pearl Harbor, HI.
**Staff Judge Advocate's Recommendation:** LCDR J.S. Ayeroff, JAGC, USN.
**For Appellant:** Maj Michael Magee, USMC; LT Jessica Ford, JAGC, USN.
**For Appellee:** Maj Suzanne Dempsey, USMC; LCDR Keith Lofland, JAGC, USN; Capt Cory Carver, USMC.

### 14 April 2016
------------------------------------------------------
## OPINION OF THE COURT
------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Senior Judge:

An officer panel, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of two specifications of sexual assault and one specification of adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934. The members sentenced him to reduction to pay grade E-1, total forfeitures, confinement for 5 years, 8 months, and 24 days; and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the punitive discharge, ordered it executed.

The appellant raises five assignments of error (AOE): (1) the military judge abused his discretion in admitting evidence of the appellant's prior sexual misconduct; (2) the appellant's individual military counsel request was improperly denied; (3) the sexual assault convictions

constitute an unreasonable multiplication of charges; (4) the sexual assault convictions are legally and factually insufficient;[1] and (5) his adultery conviction violates the Due Process clause of the Fifth Amendment to the United States Constitution.[2]  Although not raised as error, we find the court-martial promulgating order does not accurately reflect the court-martial findings and direct corrective action in our decretal paragraph.  We conclude the findings and sentence are correct in law and fact, and no error materially prejudicial to the appellant's substantial rights was committed.[3]  Arts. 59(a) and 66(c), UCMJ.

## Background

In September 2013, two female petty officers, Yeoman Second Class (YN2) CM[4] and Logistics Specialist Second Class (LS2) DK, invited the appellant to go with them to a local bar in Hawaii for a night of drinking and celebration.[5]  All three drank heavily at the bar, consuming approximately 9-12 drinks each over a 4 1/2 to 5 hour period.  Relying on bar receipts and witness testimony, a Government expert witness estimated YN2 CM's blood alcohol content (BAC) peaked between .37 and .40 on the night in question while a defense expert witness estimated it peaked at .28.[6]  YN2 CM testified that she blacked out at the bar, and her next memory was of lying on the ground outside the bar.[7]

Eventually, all three returned to LS2 DK's house.[8]  Once there, YN2 CM slept on a couch and the appellant slept on the far side of the same couch.[9]  YN2 CM testified that her next

---

[1] The appellant raises the fourth AOE pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] The appellant raises this AOE for the first time in a Motion for Reconsideration of this court's 19 November 2015 opinion in this case.  On 19 January 2016 the appellant's Motion for Reconsideration was granted.  In light of this court's decision in *United States v. Hackler*, __ M.J. __, 2016 CCA LEXIS 168 (N.M.Ct.Crim.App. 17 Mar 2016) (*en banc*) we find this AOE to be without merit.  *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

[3] Although not raised as error, we note that the appellant did not elect a forum on the record.  At his arraignment on 28 February 2014, after being advised of his forum rights, the appellant reserved forum selection and entry of pleas.  Record at 11, 13.  On 28 March 2014 and 6 May 2014, a second military judge presided at full-day pretrial motion sessions, but did not address forum selection or pleas.  From 2-4 June 2014, the second military judge presided over the 3-day trial.  Prior to calling the members, the appellant entered pleas of not guilty to all charges and specifications, but he did not formally enter a forum selection.  *Id.* at 219.  The appellant, through counsel, fully participated in *voir dire*, challenges, and presentation of evidence before the officer member panel without objection to the court's composition.  We are satisfied that the appellant was tried by a court composition of his choosing.  We find that the military judge's failure to obtain the forum election on the record was a procedural error that did not materially prejudice a substantial right of the appellant.  *See United States v. Alexander*, 61 M.J. 266, 270 (C.A.A.F. 2005); *see also United States v. Morgan*, 57 M.J. 119, 122 (C.A.A.F. 2002).

[4] YN2 CM was no longer in the Navy at the time of the appellant's trial.

[5] All were friends who worked at the same command and were celebrating the appellant getting off restriction.  YN2 CM was married to another Sailor who was stationed aboard a ship homeported in San Diego.  The appellant was also married.  Record at 486-87 and 520.

[6] *Id.* at 662-63; 774.

[7] *Id.* at 489-90.

[8] *Id.* at 436.

2

memory of the night was waking up in a dark house with a man on top of her with his penis inside her vagina.[10] She also testified that she could not move from underneath him; the man told her to roll over and then pushed her onto her stomach.[11] YN2 CM testified that she did not remember anything after that until the next morning when she awoke lying face down on the couch with her skirt "bunched up" to her thighs and her underwear on the floor.[12]

That evening YN2 CM went to a local hospital emergency room and reported that she thought she had been raped the prior night.[13] A nurse performed a sexual assault forensic examination on YN2 CM. DNA testing from that exam identified the appellant as the source of semen found on vaginal and cervical swabs taken from YN2 CM.[14]

## Discussion

I. *Evidence Admitted of the Appellant's Prior Sexual Misconduct*

The appellant avers the military judge abused his discretion by admitting evidence relating to a prior sexual assault allegation against him. He maintains that since the Government repeatedly referenced the allegation to bolster an otherwise weak case, the evidence failed the MILITARY RULES OF EVIDENCE 403, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) balancing test because it resulted in a "distracting mini-trial."[15]

The military judge allowed Ms. GC to testify that the appellant sexually assaulted her two years earlier, despite the appellant having been acquitted of this offense at a prior court-martial. Specifically, Ms. GC testified that after a night of heavy drinking with the appellant and his wife, she passed out at the couple's house. She later awoke to the appellant performing oral sex on her. Ms. GC also testified to memories of the appellant "forcing himself into [her]" and the

appellant "being so violent" that her leg hurt because he was grabbing it so hard.[16] The military judge admitted this evidence under MIL. R. EVID. 413.[17]

---

[9] *Id.* at 437-38.

[10] *Id.* at 490.

[11] *Id.* at 490-91.

[12] *Id.*

[13] *Id.* at 497.

[14] *Id.* at 606-07. The DNA expert testified that the probability of selecting a random individual to match this evidence was approximately 1 in 19 quintillion Caucasian individuals and that a quintillion is a number with 18 zeroes behind it. *Id.* at 607.

[15] Appellant's Brief of 20 Jan 2015 at 7.

[16] Record at 708.

3

We review "a military judge's decision to admit evidence for an abuse of discretion." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010)). "'The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

MIL. R. EVID. 413(a) provides, "In a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." Thus, "[i]nherent in M.R.E. 413 is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citation omitted).

Before admitting evidence under MIL. R. EVID. 413, three initial threshold requirements must be met: (1) the accused is charged with a sexual offense within the meaning of MIL. R. EVID. 413(d); (2) the proffered evidence is evidence that the appellant committed another sexual offense within the meaning of MIL. R. EVID. 413(d); and (3) the proffered evidence is logically relevant under both MIL. R. EVID. 401 and 402. *Solomon*, 72 M.J. at 179 (citing *Berry*, 61 M.J. at 95 and *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000)). To meet the second requirement, the military judge must conclude that the members "could find by [a] preponderance of the evidence that the offenses occurred[.]" *Wright*, 53 M.J. at 483 (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

Once the threshold requirements are met, "the military judge is constitutionally required to also apply a balancing test under M.R.E. 403." *Solomon*, 72 M.J. at 179-80 (citing *Berry*, 61 M.J. at 95). In conducting the MIL. R. EVID. 403 balancing test, "the military judge should consider the following non-exhaustive factors":

> strength of proof of the prior act (i.e., conviction versus gossip); probative weight of the evidence; potential for less prejudicial evidence; distraction of the factfinder; time needed for proof of the prior conduct; temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and the relationship between the parties.

*Id.* at 180 (citation omitted). "When a military judge articulates his properly conducted M.R.E. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion." *Id.* (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

---

[17] *Id.* at 220, 696-97. On 22 June 2015, the military judge issued five documents concerning matters raised at trial, one of which is captioned "Findings of Fact and Conclusions of Law Concerning the Admission of Evidence under MIL. R. EVID. 413 and MIL. R. EVID. 404(b)" (hereinafter "Ruling on Admission") at 5. These documents were attached to the record prior to authentication and are located in front of the Article 32 Report. The documents are not marked as appellate exhibits.

In this case, the military judge found sufficient evidence in Ms. GC's expected testimony to meet the required preponderance standard.[18] He also found the evidence relevant because of commonalities between the two alleged sexual assaults, including: (1) YN2 CM and Ms. GC each became intoxicated while drinking with the appellant; (2) both alleged victims were married to Sailors deployed at the time of the alleged assaults; and (3) both were assaulted while they were asleep or substantially incapable of consenting due to their intoxication.[19] The appellant contends that the military judge failed to conduct an adequate balancing test under MIL. R. EVID. 403 and that the proper balancing test requires exclusion of Ms. GC's testimony. We disagree with both contentions.

In his written conclusions the military judge stated:

I further find that the evidence is relevant and that its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the members, or by consideration of undue delay. In reaching this conclusion, I considered the fact that the [appellant] was acquitted of the prior sexual assault and sodomy involving [Ms. GC]; the credibility of her testimony-which I found to be credible; the similarities between the two incidents-which are striking, and possibility of confusion of the issue to the members.[20]

Contrary to the appellant's assertion that admitting this evidence created "a distracting mini-trial," we find the military judge properly narrowed the Government's presentation of this evidence, stating, "I do not intend that there be another trial on the merits regarding this. It's going to be very limited in scope, it will be the date on which this event occurred, the fact that the underlying facts that they went out, had drinks together, came back to the--her home, and she has a fragmented memory, woke up to the [appellant] having sexual intercourse with her or performing sexual acts upon her, and it was subsequently reported."[21] The record reveals that the Government adhered to the military judge's narrow parameters in presenting Ms. GC's testimony.[22] The military judge permitted the defense significantly more latitude in cross-examination.[23]

We also find that the military judge addressed the bulk of the *Solomon* MIL. R. EVID. 403 balancing factors in concluding it was proper to admit Ms. GC's testimony. Although he did not specifically address temporal proximity of the prior alleged sexual assault, this factor weighs in favor of admission because only two years separated the offenses. The sole factor supporting exclusion—the lack of frequency of the prior acts—is overcome by the other

---

[18] Record at 220.

[19] Ruling on Admission at 4.

[20] *Id.* at 4-5.

[21] Record at 220-21.

[22] *Id.* at 698-709.

[23] *Id.* at 221.

factors that weigh substantially in favor of admission. Finally, the military judge properly instructed the members with regard to the use of this evidence.[24] Accordingly, we find the military judge did not abuse his discretion in admitting this evidence under MIL. R. EVID. 413.

II. *Individual Military Counsel Request*

A military judge's ruling on an individual military counsel (IMC) request is a mixed question of fact and law. We review the findings of fact under a clearly erroneous standard and the conclusions of law *de novo. United States v. Spriggs,* 52 M.J. 235, 244 (C.A.A.F. 2000). Here we concur with the military judge's factual findings and adopt them as our own.

Prior to the Article 32 hearing in his case, the appellant requested Lieutenant (LT) Mishonda Mosley, JAGC, USN as an IMC under RULE FOR COURTS-MARTIAL 506, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) and the Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F § 0131 (26 Jun 2012) (JAGMAN). At the time, LT Mosley was assigned to Defense Service Office Pacific—headquartered in Yokosuka, Japan with branch offices in Hawaii, Guam, and Sasebo, Japan. All proceedings in this case were scheduled in the Navy-Marine Corps Trial Judiciary's Hawaii Judicial Circuit. The special court-martial convening authority determined LT Mosley was not reasonably available under the applicable JAGMAN provision and denied the IMC request. Following referral of the charges, the appellant renewed his request via the general court-martial convening authority who similarly determined LT Mosley was not reasonably available and denied the appellant's request. At trial, the appellant filed a motion with the court again seeking appointment of LT Mosley as his IMC, which the military judge denied.[25]

Article 38(b), UCMJ, permits an accused to be represented by an IMC of his own selection if that counsel is "reasonably available" and further provides for the Secretary of each Military Department to define "reasonably available" as well as establish procedures for determining whether a requested IMC is "reasonably available." JAGMAN § 0131 is the governing regulation for the Department of the Navy and provides that counsel are not "reasonably available" if they are assigned to commands located outside the Trial Judicial Circuit where the proceeding is to be held, unless the requested counsel is permanently assigned within 500 miles of the situs of the proceeding. Despite the requested IMC's command possessing a branch office in Hawaii, LT Mosley was permanently stationed at a command outside the Hawaii Judicial Circuit and more than 500 miles from the situs of the proceeding. From a clear and plain reading of the governing regulation, LT Mosley was not "reasonably

---

[24] *Id.* at 882-83. The military judge also exercised the "sensitivity [required] when making the determination to admit evidence of prior acts that have been the subject of an acquittal," *United States v. Griggs,* 51 M.J. 418, 420 (C.A.A.F. 1999), as he properly instructed the members about the appellant's acquittal on the allegations by Ms. GC. Record at 883.

[25] *Id.* at 216.

available," and denial of the appellant's request for her as IMC was proper. Thus we deny the appellant relief on this ground.[26]

### III. *Legal and Factual Sufficiency*

The appellant also claims that the evidence is legally and factually insufficient to support the members' guilty findings, specifically that the evidence presented did not show that YN2 CM was too intoxicated to consent or was asleep at the time of the alleged sexual assault.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ. Proof beyond a reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001). The fact finder may believe one part of a witness' testimony and disbelieve another. *Id.* When weighing the credibility of a witness, this court, like a fact finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake, such as a lapse of memory, or a deliberate lie. *Id.* at 844.

Here, there is sufficient evidence in the record to prove both sexual assault charges. LS2 DK and Mr. JR[27] testified that YN2 CM was asleep on the couch shortly after returning to LS2 DK's house and that the appellant was also on the couch. YN2 CM testified that she awoke to a man engaging in sexual intercourse with her. DNA evidence identified the appellant's semen from swabs taken from YN2 CM during her sexual assault examination. The bar receipts, percipient witness testimony, and expert testimony provide sufficient evidence to conclude that YN2 CM was incapable of consenting to sexual intercourse due to her alcohol impairment.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

---

[26] In his Motion for Reconsideration the appellant additionally argues, for the first time, that JAGMAN § 0131 violates Article 38, UCMJ and unconstitutionally violates his right to equal protection under the law. We also find these arguments meritless. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

[27] Mr. JR was LS2 DK's former boyfriend and he also stayed at LS2 DK's house the night in question. Earlier that night he attempted, at LS2 DK's request, to pick up the group and drive them to LS2 DK's house after they left the bar. But he was unable to do so because LS2 DK did not answer his phone calls while he waited for them outside the bar. He testified that he became angry at his inability to contact LS2 DK and that he eventually left and drove back to LS2 DK's house. He testified that when he arrived at LS2 DK's house he observed YN2 CM asleep on the L-shaped couch and a man asleep on the other end of the couch. *Id.* at 436-38.

IV. *Unreasonable Multiplication of Charges*

The members convicted the appellant *inter alia* of a single specification of committing a sexual act upon YN2 CM while she was asleep and a single specification of committing a sexual act upon YN2 CM while she was incapable of consenting due to alcohol impairment. After findings, the military judge and counsel engaged in the following discussion on the record:

MJ: Okay, I want to discuss with counsel the fact that the government presented two theories of liability.

TC: I think the max punishment is 31 years, sir.

MJ: I'm getting there, but what I was—what I propose to do was to merge the two specifications into one specification.

TC: No objection, Your Honor.

MJ: Defense?

CDC: No objection.[28]

. . . .

MJ: What we're going to do is we've also calculated the maximum permissible punishment at 31 years; that's based on the merger of Specifications 1 and 2 of Charge I. And [civilian defense counsel], have you seen the merger?

CDC: I have, sir.

MJ: Any objection to that?

CDC: No, sir.

MJ: Okay, very well. Let's provide the members with a copy of the new cleansed charge sheet, the—go ahead, you can put that on the folder of each member's desk.[29]

The appellant avers and the Government agrees[30] that the military judge merged the specifications for sentencing purposes. But, we find nothing in the military judge's statements or otherwise in the record to conclude that he merged the specifications solely for sentencing. "When a 'panel return[s] guilty findings for both specifications and it was agreed that these

---

[28] *Id.* at 898.

[29] *Id.* at 905; Appellate Exhibit LXVIII.

[30] Government Brief at 31.

specifications were charged for exigencies of proof, it [is] incumbent' either to consolidate or dismiss a specification." *United States v. Mayberry*, 72 M.J. 467, 467-68 (C.A.A.F. 2013). Prior to merging the specifications, the military judge recognized that the Government presented two theories of liability for the appellant's single act of sexual assault. Thus, we conclude the military judge actually intended to consolidate the two specifications into a single specification. We note the CA's action fails to reflect the consolidation and the appellant is entitled to accurate records. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). Consequently we direct corrective action in our decretal paragraph.

## Conclusion

The supplemental court-martial order will reflect that the appellant was found guilty of the following specification under Charge I:

> In that Construction Mechanic Third Class Adam S. Nelms, U.S. Navy, Construction Battalion Maintenance Unit THREE ZERO THREE, on active duty, did, on the island of Oahu, Hawaii, on or about 7 September 2013, commit sexual acts upon C.J.M. by penetrating C.J.M.'s vulva with his penis when the said CM3 Nelms reasonably should have known that C.J.M. was asleep and when C.J.M. was incapable of consenting to the sexual act because she was impaired by an intoxicant, to wit: alcohol, and that condition reasonably should have been known by the said CM3 Nelms.

The findings and sentence as approved by the convening authority are affirmed.

Judge PALMER and Judge CAMPBELL concur.

For the Court



R.H. TROIDL
Clerk of Court